# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00220-CV

**Nandita Berry, in her Official Capacity as Secretary of State of the State of Texas, Appellant**

**v.**

**Texas Democratic Party and Gilberto Hinojosa in his Official Capacity as Chair of The Texas Democratic Party, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 419TH JUDICIAL DISTRICT NO. D-1-GN-13-002362, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

## O P I N I O N

The Texas Democratic Party and its chair, Gilberto Hinojosa, (collectively, the TDP) sued Nandita Berry, in her Official Capacity as Secretary of State of the State of Texas, (the Secretary) seeking reimbursement of certain of its primary-election expenses for the 2012 election.[1] *See* Tex. Elec. Code §§ 173.001-.088 (governing primary-election financing). The trial court denied the Secretary's plea to the jurisdiction, from which she perfected this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code § 51.04(a)(8) (authorizing interlocutory appeal from denial of governmental entity's challenge to jurisdiction). The principal issue on appeal is whether the TDP satisfied all statutory prerequisites to suit necessary to invoke the limited waiver of sovereign immunity in

---

[1] John Steen, in his official capacity as Secretary of State, was the original defendant. Nandita Berry was substituted as the defendant when she succeeded Steen as Secretary of State in January 2014.

section 173.086 of the Texas Election Code. *See* Tex. Elec. Code § 173.086(a) (authorizing person who submitted "a statement of estimated primary election expenses" under Chapter 173, Subchapter D of Election Code to challenge amount approved for reimbursement of primary-election expenses). We conclude that the TDP failed to invoke section 173.086's waiver of immunity because it did not timely submit to the Secretary an itemized estimate of the category of expense for which it seeks reimbursement in the underlying lawsuit. *See id.* § 173.081(b)(1) (statement of estimated primary-election expenses is required to "contain an itemized estimate . . . of the primary expenses to be incurred"). We therefore reverse the trial court's order denying the Secretary's plea to the jurisdiction and dismiss the TDP's claims for want of jurisdiction.

## STATUTORY SCHEME GOVERNING STATE REIMBURSEMENT OF PRIMARY-ELECTION EXPENSES

As authorized by Chapter 173 of the Election Code, state funds appropriated to finance primary elections may be spent to reimburse "expenses incurred by a political party in connection with a primary election" if such expenses are "necessary for the holding of a primary election." *Id.* § 173.001(a), (b). "Regardless of whether state funds are requested for paying primary expenses, a written statement of estimated expenses to be incurred in connection with a primary election shall be submitted to the secretary of state by . . . the state chair, for expenses of the state chair or state executive committee." *Id.* § 173.081(a)(2). Among other required components, "the statement must . . . contain an itemized estimate, prepared by the authority submitting the statement, of the primary expenses to be incurred and a statement by the authority of whether state funds are requested." *Id.* § 173.081(b)(1). The "statement of estimated primary-election expenses" (SEPE)

for a general primary election must be submitted not later than the 45th day before that election, and the SEPE for a runoff primary election must be submitted no later than the 10th day after the general primary election day. *Id.* § 173.081(c)(2), (e).

On receipt of a SEPE, the Secretary "shall review the statement to determine which items of estimated expense and the amounts of those items to approve." *Id.* § 173.082(a). The Secretary "shall approve an item of estimated expense if the secretary determines that it is reasonably necessary for the proper holding of the primary election." *Id.* § 173.082(b). The Secretary is thus charged with determining, on a per-item basis, which expense items to approve in whole or part. The Secretary must "promptly notify the authority submitting the statement of each item of estimated expense not approved or approved in a reduced amount," and no primary funds may be used to pay an item of estimated primary-election expenses that has not been approved by the Secretary. *Id.* § 173.082(c), (d).

Chapter 173 authorizes the state comptroller to pay, in installments, the bulk of the estimated primary expenses that have been approved by the Secretary. The final installment, however, cannot be paid until the party chair has filed a final expense report itemizing the actual primary expenses incurred. *Id.* §§ 173.083, .084. The final expense report must be filed with the Secretary within 30 days after the general or runoff election, as applicable, regardless of whether state funds are requested for paying primary expenses. *Id.* § 173.084(a), (b).

Thus, the statute expressly contemplates that an initial estimate of primary expenses expected to be incurred may vary from the expenses actually incurred in holding the primary. If the final expense report reveals that primary expenses were overestimated in the SEPE, the discrepancy

3

is to be resolved in the final installment payment. *Id.* § 173.083(d). If the actual expenditure for an item of primary-election expense exceeds the amount estimated for the item in the SEPE, the excess expense may be paid with state funds in accordance with the provisions in section 173.085. *Id.* § 173.085(a). To obtain reimbursement from the state for an excess primary expense, section 173.085 requires that the party chair include in the final expense report "(1) an identification of the item for which the excess expense was incurred; (2) the amount of the excess; and (3) an explanation of the reason for exceeding the estimate." *Id.* § 173.085(b). The Secretary can approve state payment of the excess expense only if "that payment is justified by good cause." *Id.* § 175.085(c).

If the Secretary does not approve all the primary-election expenses requested, "[t]he authority who submitted a statement of estimated primary election expenses under [subchapter D of chapter 173] may challenge in a district court in Travis County the amount of state funds approved by the secretary of state for disbursement." *Id.* § 173.086(a).

## TDP'S CLAIM FOR REIMBURSEMENT OF LITIGATION EXPENSES

In the present case, the TDP seeks reimbursement from state primary funds for litigation expenses incurred in connection with several federal court lawsuits challenging redistricting maps adopted by the Texas Legislature in 2011. According to the TDP: it was sued in some of the lawsuits and intervened in others; its participation in the lawsuits was necessary and was related to the 2012 primary elections because the TDP had been enjoined from using the 2011 redistricting maps for the 2012 elections; and the party reasonably and necessarily incurred attorney's fees and expenses in connection with the lawsuits. It is undisputed that the TDP (1) was a party to at least some of the redistricting lawsuits before the 2012 SEPE was due; (2) had actually incurred

at least some attorney's fees and expenses related to that litigation before the 2012 SEPE filing deadline; and (3) timely filed its 2012 SEPE but did not include in that report any amount for estimated litigation expenses.[2]

Although no litigation expenses were included in the TDP's 2012 SEPE, the party later requested reimbursement of attorney's fees and expenses for the redistricting litigation in its 2012 final primary-cost report and submitted supporting invoices and documentation in connection with that request. After reviewing the information and materials provided by the TDP, the Secretary determined that the redistricting litigation expenses were not "necessary for and directly related to the conduct of primary elections" and thus were not eligible for payment from 2012 primary funds. *See id.* § 173.001(b) ("Expenses incurred in connection with . . . party activity that is not necessary for the holding of a primary election may not be paid with state funds."); *see also* 1 Tex. Admin. Code §§ 81.109(a) (Office of Sec'y of State, Primary Elections) ("[O]nly expenses necessary for and directly related to the conduct of primary elections are payable from primary funds."), .134 (Office of Sec'y of State, Primary Elections) (procedure for obtaining reimbursement of legal expenses from primary funds).[3]

---

[2] The TDP's petition and brief in this case do not identify when it began incurring litigation expenses related to the redistricting cases or the amount of its reimbursement claim. On appeal, the Secretary requested that we take judicial notice of various federal-court pleadings establishing that the TDP's participation in the federal-court proceedings substantially pre-dated the due date for filing the 2012 SEPE. At oral argument, the TDP conceded that it had participated in at least some of the lawsuits and incurred related litigation expenses in those cases prior to filing its 2012 SEPE.

[3] Although pertinent provisions of the Texas Administrative Code were amended after the events giving rise to the underlying litigation, we cite the current versions of the regulations for convenience because the changes to the rules, although substantive, are not material to the jurisdictional matter at issue in this appeal.

5

Following disapproval of the requested expenses, the TDP sued the Secretary under section 173.086 of the Election Code, sought a declaration that the litigation expenses are reimbursable under section 173.001(a) of the Code, and requested a writ of mandamus directing the Secretary to pay the requested expenses. The TDP also sought interest on the amounts denied and reasonable and necessary attorney's fees for prosecuting the underlying lawsuit. *See* Tex. Civ. Prac. & Rem. Code § 37.009 (authorizing costs and reasonable and necessary attorney's fees for declaratory-judgment action).

In addition to disputing that the requested litigation expenses are eligible for reimbursement under the Election Code and related regulations, the Secretary filed a plea to the jurisdiction based on sovereign immunity. According to the Secretary, the itemization of estimated expenses requirement in section 173.081(b)(1) of the Election Code is a statutory prerequisite to the waiver of immunity from suit in section 173.086(a) of the Code; accordingly, she argued that immunity has not been waived for disputes about primary expenses that were not itemized in a timely filed SEPE. Because it is undisputed that the TDP's 2012 SEPE did not include an estimate for any litigation expenses to be incurred in connection with the 2012 primary election, the Secretary contended that there has been no waiver of immunity as to that category of expenses. The TDP countered that, under a plain reading of section 173.086(a), the only prerequisite to a suit challenging the Secretary's disbursement decision is the timely filing of a SEPE, a requirement that the TDP satisfied.

Following a non-evidentiary hearing, the trial court denied the Secretary's plea to the jurisdiction. This interlocutory appeal followed.

6

## DISCUSSION

Although the parties agree that section 173.086(a) of the Election Code is a waiver of the state's immunity from suit, they disagree about its scope and whether the TDP's declaratory-judgment and mandamus claims are viable separate and apart from the Election Code claim. The Secretary contends that (1) section 173.086(a) does not waive immunity from suit when a party challenges the denial of an alleged primary expense that was not included in the party's SEPE; (2) declaratory-judgment relief is not available because it is duplicative of the TDP's Election Code claim and improperly seeks to compel a discretionary act; and (3) mandamus relief is likewise unavailable because the TDP seeks to compel a discretionary act and the relief requested is derivative of a claim barred by sovereign immunity.

The TDP takes the position that (1) section 173.086(a) waives immunity from suit as long as a SEPE was timely filed, which indisputably occurred in this case; (2) the failure to include any particular expense in the SEPE cannot be a statutory prerequisite to suit because sections 173.081(b)(1) and 173.086(a) do not require that any specific categories or types of expenses be included in the itemized SEPE; (3) jurisdiction cannot hinge on whether litigation expenses were included in the SEPE because the redistricting litigation was ongoing and no estimate could have been made at the time the SEPE was due; (4) declaratory relief is available because the Secretary has no discretion not to pay the litigation expenses; (5) the trial court has jurisdiction to issue mandamus relief to compel compliance with a rule or statute requiring the Secretary to pay the requested litigation expenses; and (6) even if mandamus relief would be unavailable to compel payment of the

7

requested expenses, it is available to compel the Secretary to consider the reimbursement claim on its merits.

*Standard of Review*

The state generally enjoys immunity from suit and liability unless immunity has been clearly and unambiguously waived by legislative enactment or constitutional provision. *See Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374-75 (Tex. 2006); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3, 695 (Tex. 2003); *see also* Tex. Gov't Code § 311.034 (requiring clear and unambiguous language to effect statutory waiver of sovereign immunity). Whether sovereign immunity has been waived implicates subject-matter jurisdiction. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Subject-matter jurisdiction is essential to the authority of a court to decide a case; it is never presumed and cannot be waived. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993). Whether a court has subject-matter jurisdiction is a question of law, which we review de novo, when disputed facts are not presented. *See Miranda*, 133 S.W.3d at 226 (subject-matter jurisdiction is determined as matter of law on pleadings and when evidence relevant to jurisdictional inquiry is undisputed); *Bexar Metro. Water Dist. v. City of Bulverde*, 156 S.W.3d 79, 85-86 (Tex. App.—Austin 2004, pet. denied).

The jurisdictional analysis in the present case requires us to construe the Election Code provisions that bear on waiver of immunity. We review questions of statutory construction de novo, *Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011), and our primary objective is to give effect to the legislature's intent as expressed in the

8

language of the statute, *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 632 (Tex. 2008). We discern legislative intent from the statute as a whole, not from isolated portions. *20801, Inc. v. Parker*, 249 S.W.3d 392, 396 (Tex. 2008). Absent an absurd result, we rely on the plain meaning of the text unless a different meaning is supplied by legislative definition or is apparent from the context. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008). In addition to these core statutory-construction principles, we are required to strictly construe statutes waiving sovereign immunity. *City of Houston v. Jackson*, 192 S.W.3d 764, 770 (Tex. 2006). "[Sovereign] immunity remains intact unless surrendered in express and unequivocal terms by the statute's clear and unambiguous waiver." *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 512 (Tex. 2012); *see* Tex. Gov't Code § 311.034.

*Waiver of Sovereign Immunity under Chapter 173*

Section 173.086(a) of the Election Code provides that "[t]he authority who submitted a statement of estimated primary election expenses under [subchapter D of chapter 173] may challenge in a district court in Travis County the amount of state funds approved by the secretary of state for disbursement." Tex. Elec. Code § 173.086(a). This provision clearly and unambiguously waives immunity from suit. The critical issues in this case are whether the statute provides any prerequisites to suit and whether TDP complied with such prerequisites.

"Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity." Tex. Gov't Code § 311.034. When the legislature "carves out particular substantive claims for which the State will consent to suit," it may also provide "the procedures a litigant must follow to obtain such a waiver." *Chatha*, 381 S.W.3d

9

at 512-13. "[I]t is the Legislature's function to determine what steps a litigant must take before the state's immunity is waived." *Id*. at 513. However, not all of a statute's provisions are necessarily "statutory prerequisites to suit." *See id*. at 511-12. Rather, a statutory prerequisite to suit has three defining characteristics: (1) it is found in the relevant statutory language, (2) it is a requirement, and (3) the requirement must be met before the lawsuit is filed. *Id.*

The parties agree that, under section 173.086(a)'s plain language, filing a SEPE is a statutory prerequisite to suit. *See Tarrant Cnty. Democratic Party v. Steen*, 434 S.W.3d 188, 196 (Tex. App.—San Antonio 2014, pets. filed) (holding that filing SEPE is jurisdictional prerequisite to suit). They join issue, however, on whether and to what extent the itemized-estimate requirement in section 173.081(b)(1) is a statutory prerequisite to suit.

Section 173.081, which is part of subchapter D, provides in relevant part:

> (a) Regardless of whether state funds are requested for paying primary expenses, a written statement of estimated expenses to be incurred in connection with a primary election *shall be* submitted to the secretary of state by [the party chair].
>
> (b) The statement *must*:
>
> (1) contain an itemized estimate, prepared by the authority submitting the statement, of the primary expenses to be incurred and a statement by the authority of whether state funds are requested; and
>
> (2) be sworn to by the authority submitting the statement.

Tex. Elec. Code § 173.081(a), (b) (emphases added). The Secretary contends that a SEPE that does not include a specific primary-expense item is insufficient to invoke section 173.086(a)'s waiver of immunity in a suit challenging the Secretary's decision disapproving reimbursement of the omitted item.

10

The San Antonio Court of Appeals recently considered this precise issue in *Tarrant County Democratic Party v. Steen* and concluded that filing a statement of estimated primary expenses *that complies with subchapter D's provisions, including section 173.081*, is a statutory prerequisite and that failure to file a compliant SEPE is a jurisdictional bar to suit. *Steen*, 434 S.W.3d at 196. The court further held, however, that "including an estimate of legal expenses to defend against a suit *that has not been filed* is not required to satisfy the [SEPE] statutory prerequisite," because section 173.081(b)(1) does not require any particular categories to be itemized and it would be pointless to include an estimate for a category of wholly unanticipated expenses under such circumstances. *Id.* at 196-97 (emphasis added).

In that case, the Tarrant County Democratic Party (TCDP) sought reimbursement of litigation expenses incurred in connection with several lawsuits originating in a challenge to an individual's eligibility to be a candidate in the 2008 Democratic primary election. *Id.* at 192-93. Two lawsuits had been filed and resolved prior to the 2008 SEPE filing deadline. *Id.* at 193 & n.4. TCDP requested reimbursement of their attorney's fees from the primary-election fund for those lawsuits, and the Secretary approved the request and authorized reimbursement. *Id.* Several months after the primary election, however, another lawsuit was filed raising the same challenge to the Democratic Party's candidate, who had run unopposed in the primary. *Id.* Although the TCDP requested reimbursement of litigation expenses related to the later-filed lawsuit, it apparently had not included any estimate of expenses related to that proceeding in its 2008 SEPE. *Id.* at 193, 196 (indicating that fees were incurred four months after primary election and analyzing whether future expenses for unanticipated litigation must be included in SEPE to invoke statutory waiver of

11

immunity). The Secretary denied the reimbursement claim on the basis that the requested fees were "unrelated to the administration of the primary election." *Id.* at 193. Following a bench-trial on the merits, the trial court ruled in the Secretary's favor.

In the TCDP's appeal from the adverse trial-court judgment, the Secretary asserted that sovereign immunity had not been waived for expenses that were not included in the party's SEPE, which issue the court of appeals was obligated to consider as a threshold matter. The court determined that unanticipated future litigation expenses were not required to be included in the SEPE to satisfy section 173.086(a)'s SEPE requirement. *Id.* at 196-97. The court's salient holdings can be summarized as follows: (1) filing a SEPE that complies with subchapter D's provision, including section 173.081, is necessary to invoke the waiver in section 173.086(a), (2) section 173.081(b)(1) does not specify any particular categories of expenses to include, and (3) as a result, the failure to include an estimate for unanticipated expenses does not render a SEPE defective for purposes of the immunity waiver in section 173.086(a). Although it was unclear whether the TCDP had filed any SEPE as required by section 171.081(a), the court assumed that either a SEPE had been filed or the filing requirement had been waived by the Secretary and, with or without inclusion of an itemized estimate for the requested fees, the record was sufficient to establish waiver of immunity under section 173.086(a). *See id.* at 196-197.[4]

---

[4] The case was tried on stipulated facts that did not include information about whether TCDP had submitted a SEPE for the 2008 primary. However, the court inferred that a SEPE had either been filed or the filing requirement had been waived by the Secretary because the Secretary would not have been obligated to pay the fees for the two prior lawsuits unless the party chair had filed a SEPE. *Tarrant Cnty. Democratic Party v. Steen*, 434 S.W.3d 188, 197 (Tex. App.—San Antonio 2014, pets. filed).

12

In the present case, the TDP contends that we are compelled to come to the same conclusion given the undisputed fact that it timely filed its 2012 SEPE. The TDP reads *Tarrant County* to hold that section 173.081(b)(1)'s requirement that a SEPE contain "an itemized estimate . . . of the primary expenses to be incurred" does not constitute a statutory prerequisite as to any particular category or item of primary expense. We do not construe *Tarrant County* so broadly, however. Rather, the appellate court in that case acknowledged that the SEPE filing requirement in section 173.086(a) contemplated the submission of a compliant SEPE. In any event, we hold that the itemization requirement in section 173.081(b)(1) meets the definition of a statutory prerequisite: it is found in the relevant statutory language; it is a requirement; and the requirement must be met before the lawsuit is filed. It is therefore jurisdictional and must be satisfied to invoke section 173.086(a)'s waiver.

The central question here, of course, is whether the TDP has met the requirement under the particular circumstances of this case. While it is true that section 173.081(b)(1) does not specify particular *categories* of expenses that must be included in a SEPE, it does expressly mandate the inclusion of an itemized estimate of expenses *anticipated* for the ensuing primary election. *See* Tex. Elec. Code § 173.081(b)(1) (requiring itemized estimate of "primary expenses *to be incurred*" (emphasis added)). In the present case, not only were the litigation expenses for which the TDP seeks reimbursement from state primary funds anticipated, but some litigation expenses had actually been incurred. Despite these circumstances, the TDP wholly omitted from its 2012 SEPE any estimate of expenses associated with the redistricting litigation, nor did it include any reference to

such expenses that had already been incurred.[5]  These undisputed facts distinguish the present case from *Tarrant County.*  Because the TDP failed to include any estimate for litigation expenses that were not only anticipated but also, to some degree, incurred prior to the 2012 SEPE filing deadline, the TDP failed to successfully invoke section 173.086(a)'s immunity waiver.

In sum, we hold that filing a SEPE that complies with subchapter D's requirements, including the itemization requirement in section 173.081(b)(1), is a statutory prerequisite to suit and thus essential to invoke section 173.086(a)'s waiver of immunity.  The failure to include an estimate of a category of primary expenses at least some of which have already been incurred renders a SEPE inadequate for jurisdictional-prerequisite purposes in a suit challenging the Secretary's denial of reimbursement for omitted expenses.[6]  The TDP did not satisfy section 173.086(a)'s SEPE requirement as to the redistricting litigation expenses it seeks in the underlying suit; accordingly, the Secretary retains sovereign immunity from suit as to the TDP's claims under the Election Code.

---

[5] The TDP contends that, even though the lawsuits were known and some litigation expenses had actually been incurred prior to the 2012 SEPE filing deadline, it was neither required to nor capable of providing an estimate of expenses related to those suits because the lawsuits had not *concluded* before the SEPE filing deadline.  We are unpersuaded by this argument.  Chapter 173 plainly contemplates a measure of uncertainty regarding the actual expenses that may be incurred in connection with a primary.  The party chair is only required to provide an *estimate* of expenses in the SEPE, and the statute specifically provides a true-up mechanism in the event initial estimates prove inaccurate.  Tex. Elec. Code § 173.085.  At any rate, the lack of certainty would not have precluded the TDP from making at least some estimate based on the expenses incurred to date; the number, nature, and complexity of the lawsuits; and the experience of its legal counsel.

[6] We express no opinion as to the jurisdictional effect of a party's omission of estimates for expenses that are wholly unanticipated.  Nor do we express any opinion as to what other provisions in subchapter D of Chapter 173 constitute statutory prerequisites to suit.  We hold only that when a political party has, at the time its SEPE is filed, *already incurred* some expenses of a particular type, the inclusion in its SEPE of an estimate as to that category of expenses is a statutory prerequisite to a suit for reimbursement of expenses in that category.

14

*Declaratory Judgment and Mandamus Relief*

Having concluded that the TDP failed to invoke section 173.086(a)'s waiver of immunity, we must now consider whether subject-matter jurisdiction may be based on the TDP's remaining claims for declaratory and mandamus relief.

The TDP's declaratory-judgment claim has two aspects: (1) a declaration that the Secretary violated section 173.001 by refusing to approve the disputed litigation expenses and (2) an award of reasonable and necessary attorney's fees for prosecuting the reimbursement lawsuit against the Secretary. We conclude that neither of these claims survives the sovereign-immunity bar.

The Texas Uniform Declaratory Judgments Act (UDJA) "is not a general waiver of sovereign immunity." *Texas Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011). The UDJA "does not enlarge a trial court's jurisdiction, and a litigant's request for declaratory relief does not alter a suit's underlying nature." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 370 (Tex. 2009). "'[P]rivate parties cannot circumvent the State's sovereign immunity from suit by characterizing a suit for money damages . . . as a declaratory-judgment claim.'" *Id.* at 371 (quoting *Texas Natural Res. Conserv. Comm'n v. IT-Davy*, 74 S.W.3d 849, 856 (Tex. 2002)); *see City of Houston v. Williams*, 216 S.W.3d 827, 829 (Tex. 2007) (immunity is not waived if sole purpose of declaration of contractual or statutory rights is to obtain money judgment). The relief the TDP seeks in its UDJA claim emanates from substantive rights conferred under Chapter 173 of the Election Code; as discussed above, however, the TDP's Election Code claims are barred by sovereign immunity. "[A]n otherwise proper UDJA claim seeking to construe or invalidate a statute is nonetheless barred by sovereign immunity if the remedy would have the effect of establishing a right to relief against the State that implicates sovereign immunity and for which

15

immunity has not been waived." *Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality*, 307 S.W.3d 505, 515 (Tex. App.—Austin 2010, no pet.). Thus, the TDP cannot use a declaratory-judgment action to obtain indirectly what is otherwise directly barred by sovereign immunity.

To the extent the TDP seeks to invoke the narrow *ultra vires* exception to confer jurisdiction over its UDJA claim, we conclude that the exception is not applicable. "To fall within [the] *ultra vires* exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Heinrich*, 284 S.W.3d at 372. To determine whether the TDP could state a claim under the *ultra vires* exception, we must determine whether the Secretary has discretion to deny a claim for reimbursement of primary expenses from primary funds.

Chapter 173 requires approval of an item of estimated expense "if the secretary determines that [the item of expense] is reasonably necessary for the proper holding of the primary election." Tex. Elec. Code § 173.082(b). If the Secretary disapproves of an estimated primary expense on the grounds that it is not reasonably necessary, in whole or part, that expense cannot be reimbursed from primary funds. *Id.* § 173.082(d). Section 173.085 also authorizes the Secretary to determine whether good cause exists to reimburse all or part of an excess expense and would be implicated in this case but for the sovereign immunity bar that obtains from the TDP's omission of the disputed litigation expenses from its SEPE. These provisions clearly imbue the Secretary with some discretion as to the reimbursement of primary expenses.

16

If the Secretary's determinations are disputed and the aggrieved party files suit, the trial court is required to "order payment in the proper amount," but only if the the court decides the claimant is entitled by law to the additional relief. *Id.* § 173.086(c). Despite this mandatory language, we observe two things: (1) there can be no trial-court determination of an entitlement to additional relief here because the TDP's claims are barred by sovereign immunity, and (2) the legislature has expressly granted the Secretary discretion to make the determinations at issue in the TDP's lawsuit—whether the disputed expenses are "reasonably necessary for the holding of the primary election" and whether there is "good cause" to pay an item of expense in excess of the estimated amount. Because the TDP's lawsuit complains of the Secretary's discretionary act rather than her failure to perform a purely ministerial act, the *ultra vires* exception is not available to avoid the sovereign immunity bar. *Accord Tarrant Cnty. Democratic Party*, 434 S.W.3d at 199-200 (lawsuit implicated Secretary's discretionary acts under primary-fund reimbursement statute such that *ultra vires* exception is not available in suit to compel reimbursement of litigation expenses).

For the same reasons, we conclude that mandamus relief is not available to compel payment of the disputed litigation expenses. The TDP's mandamus claim is derivative of its claims under the Election Code and likewise implicates sovereign immunity. Mandamus is not available to compel the state to perform a discretionary act, but it may be viable for *ultra vires* acts or to compel performance of a clearly mandatory and ministerial duty. *See City of Round Rock v. Whiteaker*, 241 S.W.3d 609, 628 (Tex. App.—Austin 2007, pet. denied). As stated above, these exceptions are inapplicable in the present case. Even when sovereign immunity is not implicated, mandamus is available only when there is no adequate remedy at law. *See In re Masonite Corp.*,

17

997 S.W.2d 194, 197 (Tex.1999) (orig. proceeding). The TDP had an adequate remedy under the Election Code but failed to satisfy the statutory prerequisites to suit. It cannot now obtain a mandamus remedy to avoid the adverse consequences of such omission.

On appeal, the TDP has further asserted that the request for mandamus relief has another aspect that does not involve a discretionary task: compelling the Secretary to consider the reimbursement request on its merits. However, the documentation the TDP attached to its petition conclusively establishes that the Secretary has already considered and denied the reimbursement request on its merits. Mandamus relief is therefore unnecessary to compel the requested action.

## CONCLUSION

For the reasons stated, we reverse the trial court's order denying the Secretary's plea to the jurisdiction and render judgment dismissing the TDP's claims for want of subject-matter jurisdiction.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Reversed and Dismissed

Filed:  October 24, 2014

18